UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ERNESTO DEJESUS,

                                                Plaintiff,

       v.                                                                    9:06-CV-1496
                                                                                  (FJS/GJD)

GLENN S. GOORD, Commissioner, NYS
Department of Correctional Services; LESTER
WRIGHT, Chief Medical Director; THOMAS
EAGEN, Grievance Director; and AZEVEDO,

                                              Defendants.
_____

**APPEARANCES**                                        **OF COUNSEL**

**ERNESTO DEJESUS**
**04-A-3038**
**Bare Hill Correctional Facility**
**Caller Box 20**
**Malone, New York 12953**
**Plaintiff** *pro se*

**OFFICE OF THE NEW YORK**                **ADELE M. TAYLOR-SCOTT, AAG**
**STATE ATTORNEY GENERAL**
**The Capitol**
**Albany, New York 12224**
**Attorneys for Defendants**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       In this amended civil rights complaint, Plaintiff alleges that Defendants have denied him constitutionally adequate medical care. *See* Dkt. No. 7, Amended Complaint. Currently before the Court is Defendants' motion to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 19. Plaintiff has filed a memorandum of law in

opposition to Defendants' motion, and Defendants have filed a reply. *See* Dkt. Nos. 21-22.

## II. DISCUSSION

**A.     Procedural Background**

Plaintiff originally filed this action, naming as Defendants Nurses Warner, Grant, Primeau, and "Jane Doe," four nurses at Bare Hill Correctional Facility; Glenn S. Goord, the former[1] Commissioner of the Department of Correctional Services ("DOCS"); Lester Wright, the Chief Medical Officer of DOCS; and Thomas Eagen, the Director of the Inmate Grievance Program. *See* Dkt. No. 1. On January 10, 2007, this Court advised Plaintiff that his original complaint was insufficient and ordered him to file an amended complaint or the Court would dismiss his action. *See* Dkt. No. 6. Plaintiff's original complaint attempted to challenge his medical care constitutionally, under 42 U.S.C. § 1983, and statutorily under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.

On February 5, 2007, Plaintiff filed his amended complaint; and, after reviewing the complaint, this Court ordered that it be filed and served. *See* Dkt. Nos. 7-8. In his amended complaint, Plaintiff named only Defendants Goord, Wright, Eagen, and Warner, from the original complaint. *See* Dkt. No. 7. Plaintiff added Dr. De Azevedo[2] as a Defendant in his amended complaint. The Court also notes that, in the amended complaint, Plaintiff appears to have ***abandoned any claims of an ADA violation.***[3] *See* Amended Complaint at ¶ 1. Plaintiff

---

[1] The current Commissioner of Correctional Services is Brian Fischer.

[2] Plaintiff misspelled this doctor's name. The proper spelling is De Azevedo, and the Court will refer to this Defendant by the proper spelling of his name.

[3] Although Plaintiff still mentions the ADA in the amended complaint at ¶¶ 8-9, he states only that he filed a grievance ***with the facility*** for violations of the ADA and that, after he filed that grievance, the "medical staff" retaliated against him by withholding his medication. *See*
(continued...)

also abandoned any claims against Nurses Grant, Primeau, and Doe as noted in this Court's February 7, 2007 Order. *See* Dkt. No. 8 at 2 & n.1. In this Court's February 7, 2007 Order, the Court also dismissed any claims against Nurse Warner because the amended complaint failed to state any specific claims against her. *See* Dkt. No. 8 at 2 & n.2. Thus, the remaining Defendants in this action are Commissioner Goord, Chief Medical Officer Wright, Inmate Grievance Director Eagen, and Dr. De Azevedo.

**B.    Facts**

In his amended complaint, Plaintiff states that, prior to his incarceration, he suffered an injury to his left knee. *See* Amended Complaint at Facts at ¶ 1. Upon entering the DOCS system, Plaintiff asserts that he sought treatment for his knee injury. *See id.* Plaintiff was evaluated, and it was determined that Plaintiff would need surgery. Plaintiff was referred to a specialist, Dr. Mitchell Rubinovich, who performed a total knee replacement on November 2, 2004. *See id.* at ¶¶ 2-3, 11. Although the operation appeared to have been successful, shortly after the surgery, Plaintiff told his medical care providers that he was experiencing severe pain and numbness in his left foot.[4] *See id.* at Facts at ¶¶ 3, 12.

---

[3](...continued)
Amended Complaint at ¶ 9. Although Defendants argue in their memorandum of law that Plaintiff does not state an ADA claim, Plaintiff has clearly abandoned that claim. Thus, he does not, in fact, state a claim under the ADA. Therefore, this Court will focus only on Plaintiff's constitutional claims.

[4] The Court notes that Plaintiff's amended complaint appears to have two sets of facts. The beginning of Plaintiff's amended complaint states the facts very generally with no dates associated with certain events. *See* Amended Complaint at Facts at ¶¶ 1-10. Then, Plaintiff returns to the beginning of his story and realleges some of the events from the beginning of the complaint, together with dates and names of individuals involved in the events. *See id.* at ¶¶ 11-49. The Court has attempted to piece together Plaintiff's entire story from both sections of the complaint.

The surgeon initially informed Plaintiff that the numbness was normal after surgery and that Plaintiff's feeling would return.  *See id.* at ¶ 3.  Plaintiff was prescribed physical therapy, and Plaintiff asked the therapist about the loss of feeling in his left foot.  *See id.* at ¶ 4.  The therapist told Plaintiff that what he was feeling was not the normal result of knee surgery and that the foot should have recovered from any "normal" loss of sensation.  *See id.*

Plaintiff stated that on a routine visit to Dr. Craig Richards, he told the doctor that the pain in his leg was "excruciating;" and, therefore, Plaintiff was scheduled for an appointment with Dr. Rubinovich.  *See* Amended Complaint at Facts at ¶ 13.  Plaintiff states that, by letter dated January 27, 2005, Dr. Rubinovich notified Dr. Richards about the increased pain in Plaintiff's foot and discussed the possibility that Plaintiff had some nerve damage that was causing the pain.  *See id.* at ¶ 14.  On February 25, 2005, Plaintiff told Dr. Rubinovich that the pain in his left foot had not improved, and the doctor recommended that Plaintiff's physical therapy be extended for an additional eight weeks.  Plaintiff claims that on February 27, 2005, Dr. Rubinovich specifically asked Defendant Wright to extend Plaintiff's physical therapy; but on March 28, 2005, Defendant Wright denied the request.  *See id.* at ¶¶ 16-17.  On April 28, 2005, Defendant Wright again denied the extended physical therapy but approved an orthopedic consultation.  *See id.* at ¶ 18.

Plaintiff claims that Dr. Rubinovich also recommended an increase in pain medication and that this was initially denied but that, on November 4, 2005, the pain medication was increased for the morning dose only.  *See id.* at ¶ 19.  On October 6, 2005, Plaintiff states that "defendants" were informed that Plaintiff was suffering from "severe axonal neuropathy."  *See id.* at ¶ 20.  Plaintiff contends that he was "eventually transferred to Bare Hill Correctional Facility,"[5]

---

[5] Plaintiff does not appear to indicate where he was incarcerated before his transfer to Bare Hill.

where he was placed in a top bunk in a housing unit far from the medical unit. *See id.* at ¶ 21. Plaintiff states that he suffered for more than one year without treatment for his damaged foot. *See id.* at ¶ 22.

Plaintiff alleges that he filed grievances on March 3 and 23, 2005, August 8 and 24, 2005; September 13 and 17, 2005; October 17, 2005, and December 18, 2005. *See id.* at ¶¶ 23, 28, 32. Plaintiff claims that the nursing staff verbally harassed him by stating that his foot impairment was the result of another medical condition from which Plaintiff suffered. *See id.* at ¶¶ 8, 27. Plaintiff filed some of the grievances to which he refers against the nursing staff for the emotional suffering that their conduct in treating him caused. *See id.* at ¶¶ 27-28. Plaintiff states that he notified Defendant Wright and the Commission on Corrections that his serious medical needs were being ignored and that his complaints were being "mis-titled to avoid the real issues of the complaints in an effort to divert attention away from the investigations of any other agency." *See id.* at ¶ 29.

On November 3, 2005, Dr. Rubinovich informed the "defendants" that Plaintiff was suffering from "Neuropraxia postoperatively," but nothing was done to address Plaintiff's medical needs. *See id.* at ¶ 30. Plaintiff states that, after fourteen months of suffering, he was referred to Dr. Marco R. Bernard for a consultation. *See id.* at ¶ 41. Dr. Bernard determined that, because the damage to Plaintiff's peroneal nerve had been left untreated for over fourteen months, Plaintiff's prognosis for repair of the damage was not good. *See id.* at ¶¶ 41, 43. Dr. Bernard also determined that, after the knee surgery, Plaintiff had developed a "soft tissue mass," causing hematoma, numbness and weakness over the left lower extremity. *See id.* at ¶¶ 42-43.

In addition, Plaintiff claims that a neurosurgeon examined him on April 13, 2006, and recommended exploratory surgery to correct the nerve damage; however, Plaintiff states that he has been "informed" that any attempt to operate now could result in the loss of his foot or his leg

due to the great delay in providing treatment for his condition. *See id*. at ¶¶ 45-47. Finally, Plaintiff states that his attorney[6] contacted Dr. De Azevedo, who stated that Plaintiff had been scheduled for surgery. However, the surgery was cancelled. *See id.* at ¶ 48. Plaintiff generally claims that, although he was made promises regarding his care, these promises were never kept. *See id.* ¶ 37.

C.     **Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 90, 102, 2 L. Ed. 2d 80 (1957)) (other citation omitted). Moreover, "[t]he court must accept the material facts alleged in the complaint as true." *Id*. (citing *Cooper v. Pate,* 378 U.S. 546, 546, 84 S. Ct. 1733, 1733, 12 L. Ed. 2d 1030 (1964) (per curiam)). In determining whether a complaint states a cause of action, a court affords great liberality to *pro se* litigants. *See Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (citations omitted).

In this case, Defendants have filed their motion to dismiss as to Defendants Goord, Wright, and Eagen.[7]

---

[6] There are no dates associated with this final allegation, and it is unclear to whom Plaintiff is referring when he states that his "attorney" contacted Dr. De Azevedo.

[7] The Court notes that, at the time that Defendants filed their motion, Dr. De Azevedo had not been served. Initially, there was some difficulty determining Dr. De Azevedo's location for service. Since Defendants filed their motion, Dr. De Azevedo has been served and has answered the amended complaint. *See* Dkt. Nos. 23, 27. Dr. De Azevedo has not joined in the motion to dismiss, nor has he filed a motion of his own.

**D.     Personal Involvement**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation and other citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (citation omitted).

As this Court recently explained,

> [s]upervisory officials . . . are personally involved in a constitutional violation only if[] (1) they directly participate[] in that violation; (2) they fail[] to remedy that violation after learning of it through a report or appeal; (3) they create[], or allow[] to continue, a policy or custom under which the violation occur[s]; (4) they [are] grossly negligent in managing subordinates who cause[] the violation; or (5) they exhibit[] deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.

*Carlisle v. Goord*, No. 9:03-CV-296, 2007 WL 2769566, *16 (N.D.N.Y. Sept. 21, 2007) (footnote omitted).

Plaintiff claims that Defendant Goord is personally responsible for the alleged denial of medical care because he is the "chair" of the Inmate Grievance Program, Central Office Review Committee ("CORC").  The CORC is the highest level to which an inmate may appeal a grievance.  Although Plaintiff states that Defendant Goord is the "chair" of the CORC, this is not the case.  A review of the New York State regulations creating the CORC shows that the Commissioner is not even a member of the Committee.

The CORC consists of "the deputy commissioner and counsel, deputy commissioner for correctional facilities, deputy commissioner for program services, deputy commissioner for administrative services, and the deputy commissioner and chief medical officer, or their designees expressly authorized to act for them."  N.Y. Comp. Codes R. & Regs. tit. 7,

§ 701.5(d)(2)(i).  The regulation also provides that "[a] representative of the office of diversity management will attend CORC hearings and have input on grievances alleging discrimination but will not vote."  *Id.*  The Commissioner of the Department of Correctional Services is ***not*** a member of the CORC.  Moreover, Plaintiff does not state that he contacted Defendant Goord directly or that Defendant Goord was somehow aware of Plaintiff's medical problems.  Thus, the Court finds that Plaintiff has not alleged sufficient facts to show that Defendant Goord was personally involved in the alleged violation of his constitutional rights.  Therefore,  the Court dismisses Defendant Goord from this action.

The same is true for Defendant Eagen.  Although Defendant Eagen is the director of the Inmate Grievance Program and a member of the CORC, the regulations provide that Defendant Eagen does ***not*** have a vote in affirming or reversing an inmate's grievance on appeal.  Under the regulations governing the grievance process, the IGP Director "is not a voting member of the CORC." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(2)(iii).  Since Defendant Eagen is ***not*** a voting member of the CORC, it would be very difficult for him to be "personally involved" in a decision that the Committee made.  Thus, because Defendant Eagen had no authority to change Plaintiff's condition, he may not be personally liable for any pre-existing constitutional violations.

Defendant Wright is also a supervisory official; however, in his amended complaint, Plaintiff specifically alleges that his doctor contacted Defendant Wright ***personally*** to request additional physical therapy and that Defendant Wright denied this request.  *See* Amended Complaint at Facts at ¶¶ 16-18.  Plaintiff also claims that he notified Defendant Wright directly that his serious medical needs were being ignored.  Generally, the failure of a supervisory official

to respond to a letter of complaint is insufficient to create personal responsibility. *See Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (citation omitted).  However, because Defendant Wright was allegedly personally involved in the decision to deny Plaintiff additional therapy and was apparently being consulted about Plaintiff's case, he has sufficient personal involvement to withstand a motion to dismiss.

### III. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED IN PART**; and the Court further

**ORDERS** that the action is dismissed as against Defendants **GOORD and EAGEN**; and the Court further

**ORDERS** that Defendants' motion to dismiss is **DENIED** as against Defendant Wright.

**IT IS SO ORDERED.**

Dated: March 4, 2008
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge